LITTLE v. ONE CARGO OF LUMBER.

In re W. J. HOGGSON CORPORATION.

(District Court, S. D. Florida. December 8, 1924.)

No. 1900.

1. Shipping ⬤➾170—"Demurrage" defined.

"Demurrage" is a claim for damages for failure of consignee to accept delivery of goods.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Demurrage.]

2. Shipping ⬤➾177—Consignee, who was not at fault for delay in unloading cargo, held not liable for demurrage and damages caused by delay.

Consignee, who was, on arrival of cargo and at all times thereafter, ready, willing, and able to unload cargo, but was prevented from so doing by seller's refusal acquiesced in by owner of towboat which had towed lighters tending cargo, to permit consignee to unload until payment of invoice price, was not liable to owner of towboat for demurrage and damages caused by delay.

3. Shipping ⬤➾177—Consignee, whose refusal of delivery caused delay, liable for demurrage.

Demurrage is allowed against consignee of cargo, where he, by his acts in refusing delivery, caused delay.

In Admiralty. Libel by D. E. Little against one cargo of lumber claimed by the W. J. Hoggson Corporation. Decree of dismissal.

E. O. Locke, of Jacksonville, Fla., for libelant.

Kay, Adams & Ragland, of Jacksonville, Fla., for claimant.

CALL, District Judge. The libel in this case was filed against the cargo of lumber upon four lighters, loaded in Savannah, Ga., by the Savannah Creosoting Company, Inc., consigned to the W. J. Hoggson Corporation, St. Augustine, Fla., and towed by the libelant to said last-named city, and delivered to the consignee; the consignee to unload the lighters. The lighters were to be delivered at the bridge site, the bridge then being under construction by the consignee. The libelant arrived at St. Augustine on June 21, and June 22, 1923, pro-

cured a receipt for the four lighters of lumber from the consignee. The lighters were said to contain 250,000 feet of creosoted lumber. No bill of lading was issued. A letter of instruction was given to the libelant, said letter being as follows:

"Savannah, Georgia, June 9, 1923.

"Capt. D. E. Little, Savannah, Ga.—Dear Sir: In accordance with agreement dated May 15th, you will please take in tow four lighters of creosoted lumber, now tied up at our dock, and proceed to St. Augustine, Fla., and deliver same to W. G. Hoggson Corporation at the bridge site which is now being erected for the Fountain of Youth Hotel Company. When you reach Fernandina, Florida, will thank you to fill in the dates on the two inclosed telegrams, sending one to the Georgia-Florida Pine Company, Jacksonville, Fla., and one to ourselves. You will please collect balance of towing, $950, from the Georgia-Florida Pine Company, and mail us your bill direct for lighter hire, which will be taken care of from this office. When you have delivered all lighters to the Hoggson Corporation, please notify us in writing, giving us the date that each lighter was delivered.

"Yours very truly,

"The Savannah Creosoting Co., Inc.,

"By [Signed] T. J. Thorne.

T.J.T./B        (T. J. Thorne)"

(Libelant's Exhibit No. 2.)

Libelant claims demurrage on the four lighters at the rate of $5 per day each, from June 25, 1923 (the date to which the shippers had paid lighter hire), to April 15, 1924; $300 for towing said lighters loaded with lumber from St. Augustine to Jacksonville, Fla.; watchman's fees; repairs to one lighter sunk; and salvage of a portion of the lumber upon the sunken lighter.

The answer of claimant, the Hoggson Corporation, admits the arrival of the tugboat and four lighters loaded with lumber, on June 21, 1923, and the reported arrival to claimant, but denies that libelant was ready or willing to deliver the lumber to consignee; denies that any notice was given claimant that demurrage would be claimed for delay after June 25th in unloading the lighters; alleges its willingness to receive said lumber and unload same, but libelant did refuse to allow said unloading to be done; alleges that subsequently request was made to libelant to permit the unloading and checking of said lumber, but libelant refused to allow same until certain

charges were paid, and has since continued such refusal. The answer then proceeds to set out the circumstances under which it required the lighters to be removed from the bridge site; that the same was done by some person unknown to it. An amendment was made to the answer, putting in issue the jurisdiction to proceed in rem.

Testimony was taken on the issues and the same submitted for a final decree. The testimony is quite voluminous. The following facts appear to be proven:

The claimant placed its order for the lumber with the Georgia-Florida Pine Company, for the lumber to be delivered f. o. b. lighters at St. Augustine; that the Georgia-Florida Pine Company, in fulfilling the order, procured the Savannah Creosoting Company to manufacture and send the lumber to the Hoggson Corporation. The Savannah Company paid the lighter hire up to June 25th, and the towage service and demurrage on the towboat was paid by the Georgia-Florida Pine Company, about July 5, 1923, and the towboat returned to Jacksonville, leaving the lighters, loaded with lumber, tied up alongside the bridge. Soon after the arrival of the lighters at St. Augustine, a representative of the Georgia-Florida Pine Company appeared and demanded the invoice price of the lumber, and insisted the lumber should not be unloaded off the lighters until the amount was paid. This representative and the libelant thereupon put a watchman on the lighters, the evident purpose of whose presence was to prevent the unloading of the lumber, until the invoice was paid. The libelant's communications and demands for demurrage, and transactions subsequent to procuring a receipt for the four lighters, were with the Creosote Company and the Georgia-Florida Pine Company.

Upon the approach of the hurricane season, the claimant communicated to the Georgia-Florida Pine Company a desire that the lighters should be moved from the bridge structure to avoid injury to the structure, and thereupon in October the Pine Company had the libelant tow the four lighters to Chaseville, a few miles down the St. John's river from Jacksonville; while tied there one of the lighters sunk, and at the request of the representative of the Pine Company and an insurance agent (the insurance on the cargo having been taken out in the name of the Pine Company), the libelant performed the service of saving some of the lumber which had gone adrift

from the sunken lighter, and loading it and the cargo that remained on the sunken lighter on another lighter. The sunken lighter was then taken to a shipyard and repaired. During the time the four lighters were tied up to the bridge structure the claimant proposed to the Pine Company to unload the lighters upon the bridge structure, the Pine Company attaching a lien for the invoice price, but nothing came of this. The only reason assigned by the Pine Company for its refusal to allow the claimant to unload the lighters was that reports had been heard reflecting upon the financial standing of the claimant. At the first interview of the representative of the Pine Company, about June 22d, the claimant's representative promised not to disturb the cargo of the lighters until the invoice price for same was paid.

[1] As I view this case the first question for me to decide is: Is a case for demurrage made out by the testimony? Demurrage is essentially a claim for damages for failure of the consignee to accept delivery of the goods. Banquo-Russo Asiatique London v. U. S. S. B., E. F. Corp. (D. C.) 281 F. 888.

[2, 3] In the instant case, from the testimony, it appears that the claimant was, at all times from the arrival of the cargo, ready, willing, and able to unload the lumber from the lighters, and was prevented from so doing by the joint act of the libelant and the Pine Company. As I read the authorities, demurrage is allowed against a consignee of a cargo where he by his acts in refusing delivery caused the delay. In this case the delay was not caused by the refusal of the consignee to accept the cargo. It was apparently willing to receive this lumber, and this willingness was indicated by the receipt given the libelant before the arrival on the scene of the representative of the Pine Company, at which time no delay had occurred.

Had the libelant not joined the representative of the Georgia-Florida Pine Company in his purpose of not having the lumber unloaded until the invoice was paid, his position would have been improved; but joining in this purpose, which seems to me unreasonable, and assisting and abetting the Pine Company as he did, he thereby deprives himself of the right now to claim demurrage for the delay in receipt by the consignee of the cargo. There would have been no danger of the Pine Company losing the amount due for the lumber, had it been un-

loaded and checked to ascertain the quantity, because the statute of the state of Florida gives a lien upon the goods for the purchase money due. Again, it does not seem reasonable to demand the purchase money before there was afforded the consignee an opportunity to check the lumber and thus ascertain the quantity, for it must be borne in mind that there was no bill of lading issued.

Again, in U. S. v. Sugarland Industries, et al. (C. C. A.) 296 F. 913, the Circuit Court of Appeals for this circuit, speaking through Judge Walker, has this to say: "The appellant was under a duty to minimize the damage resulting from the appellees' failure to provide for receiving the cargo at the rate it could and would have been discharged from the ship, but for the default of the appellees. The appellant is not entitled to recover the amount of demurrage claimed; if it was entirely practicable for it to obviate any delay beyond the lay days by incurring and charging against the appellees an expense substantially less than the amount of demurrage claimed for the avoidable delay."

In that case it was the ship's duty to discharge the cargo, and in this case it was the consignee's; but that can make no difference in the application of the principle. In that case it was the default of the consignee which caused the delay, and in this case, as above pointed out, it was the default of the Pine Company, acquiesced in and abetted by the libelant, and they caused the delay from June 22, 1923, up to and including April 15, 1924. I am of opinion therefore that libelant has not proven himself entitled to demurrage.

The other claims propounded in the libel are in no better case. The towing of the lighters from St. Augustine to Chaseville was made necessary by the delay, caused through no fault of claimant. The same may be said about the sinking of the lighter at Chaseville, the repairs made necessary by the action of the toredo worm while tied up to the bridge structure, the saving of the lumber from the sunken lighter, and the services of the watchman placed by the joint act of libelant and the representative of the Pine Company.

There are other questions raised in the pleadings and briefs of proctors; but, having reached the conclusion I have, from the study of the testimony, I make no decision upon them.

A decree will be entered, dismissing the libel, at the cost of the libelant.